WMG

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

NO. 4:17-CR-57-1BO

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL INFORMATION |
| | ) | |
| ATOYA BELLAMY | ) | |

The United States Attorney charges that:

## I.   STATUTORY AND REGULATORY BACKGROUND

### A.   GENERAL BACKGROUND ON MEDICAID

1.   Medicaid is a federal health care benefit program that helps pay for reasonable and medically necessary services for enrolled individuals, referred to herein as "beneficiaries." Medicaid is administered by state governments.  In North Carolina, Medicaid is administered by the North Carolina Division of Medical Assistance (DMA).   The Medicaid program and DMA are collectively referred to herein as "Medicaid."   Medicaid pays for covered medical services of its beneficiaries, who are generally low income individuals.

2.   If qualified, individuals can enroll to become Medicaid beneficiaries.   At the time of enrollment, a beneficiary receives

1

a unique alphanumeric code that is issued by the program. This code is known as a Medicaid Identification Number. Similar to traditional insurance, beneficiaries may use their Medicaid Identification Numbers to receive covered medical services.

3. Medicaid beneficiaries receive services from medical practitioners and companies referred to as Medicaid "providers." Once a provider enters into a contract with Medicaid, the program issues a unique number to the provider, known as the "provider number." Providers must also obtain a federal identification number, known as National Provider Identifier, or "NPI" number. All Medicaid providers must certify that they will only bill the government for services that they actually render.

4. After a provider renders a covered medical service to a Medicaid beneficiary, the provider may bill Medicaid for the reasonable and necessary costs of the service. To bill Medicaid, providers generally send an electronic claim to a processor for the program. Providers may also hire billing companies or contractors to perform the task of submitting claims to Medicaid for payment; however, the provider is responsible for ensuring that the programs are only billed for services that the provider actually renders.

5. In each claim transmission, the provider must enter

2

truthful information concerning the services it performed. The claim transmission generally includes, but is not limited to, the date of the alleged service, the Medicaid Identification Number of the beneficiary, the nature of the service rendered, and the provider number. Providers are not required to send in copies of medical records or other forms of proof to justify the claim. The electronic claim is generally all that is required to receive payment from Medicaid.

6. While Medicaid claim processors may reject a claim if, for example, the provider or beneficiary is not enrolled, claim processors do not generally contact the beneficiary or provider before payment is made to confirm that the billed services were actually provided. They also do not typically review medical records or other underlying documentation to substantiate the billed services. Instead, Medicaid presumes the truth of each claim, and generally pays providers for the services that they bill. In other words, Medicaid entrusts its providers to only submit claims for the services that they actually perform.

7. Although Medicaid does not generally scrutinize claims before payment, both programs retain the right to audit providers after payment has been made. As such, providers are obligated to retain original source records, such as medical records, charts,

3

or other documents, that tend to show the nature of the services actually rendered by the provider. In the event that Medicaid agents discover that an electronic claim is not supported by the underlying documentation, the program may recoup those funds from the provider, or impose other sanctions.

B. COVERAGE FOR OUTPATIENT BEHAVIORAL HEALTH SERVICES

8. Some of the services covered by Medicaid include Outpatient Behavioral Health Services ("OBHS"). OBHS include intensive in home therapy and day treatment services.

9. In most instances, Medicaid relies upon Managed Care Organizations (MCOs) to administer payment to providers for OBHS rendered to Medicaid recipients.

10. MCOs receive and rely upon electronic claim submissions from authorized Medicaid providers. MCOs, in turn, disburse Medicaid funds for covered service. Providers are only authorized to bill MCOs for services that have actually been rendered.

11. As with other covered services, each provider of OBHS is required by Medicaid and the appropriate MCO to maintain service notes and other medical records for a period of five years in order to document and substantiate any reimbursement requested from Medicaid or one of its MCOs. Not only are the service notes a requirement under Medicaid policy, they are necessary to ensure

4

that these recipients receive the care that the Medicaid funds are designated to provide, by giving an account of the efficacy of the individualized plan of care.

12. For OBHS, the minimum documentation requirement is a full service note for each date of service, written and signed by the clinician who provided the service. Medicaid policy requires that service notes include the following:

- Patient name
- Service record number
- Medicaid identification number
- Service provided
- Date of service
- Place of service
- Type of contact (face-to-face, telephone call, collateral)
- Purpose of the contact (tied to the specific goals in the plan)
- Description of the provider's interventions
- Amount of time spent performing the service
- Description of the effectiveness of the interventions in meeting the recipient's specified goals as outlined in the individualized plan of care.
- Signature and credentials of the clinician providing the service.

## II. FACTUAL BACKGROUND

13. During times material to this Information, Shephard Lee Spruill, II was an individual who operated a mental and behavioral health services company, known as Carolina Support Services (CSS). CSS provided behavioral health services to children in various counties within North Carolina, including counties within the

5

Eastern District of North Carolina. CSS was a Medicaid provider authorized to provide OBHS to beneficiaries. Through CSS, Spruill, had access to demographic information for large numbers of Medicaid beneficiaries. This information included, among other things, Medicaid Identification Numbers of beneficiaries.

14. ATOYA BELLAMY, defendant herein, had masters degrees in business administration and education, and an undergraduate degree in accounting. BELLAMY also had experience in billing Medicaid and its MCOs for OHBS. During times material to this Information, BELLAMY worked for Spruill at CSS as a program manager and assisted with billing. BELLAMY also assisted with billing services for Spruill at various other Medicaid providers owned or controlled by Spruill.

15. Spruill, BELLAMY, and others engaged in a conspiracy to bill Medicaid and its MCOs for services that were not rendered by CSS. Between January of 2011 and December of 2013, Spruill, BELLAMY, and others collaborated to identify various instances where CSS was authorized to perform OBHS for clients, but where CSS had not in fact performed and billed for OBHS. These unutilized OBHS were referred to by Spruill, BELLAMY, and others, as "money left on the table." BELLAMY and others identified unutilized OBHS to target for fraudulent billing.

6

16. After identifying "money left on the table," BELLAMY and others caused CSS to bill Medicaid and its MCOs for the unutilized services as though they had been performed. In fact, no such OBHS had been performed, and the billing transmissions for the "money left on the table" were false and fraudulent.

17. After billing Medicaid and its MCOs for the fraudulent OBHS, BELLAMY and others created and caused to be created false documentation to support the fraudulent OBHS billings.

## COUNT ONE
### *Conspiracy to Commit Health Care Fraud*
### *18 U.S.C. § 1349*

18. Introductory Paragraphs 1 through 17 are realleged and incorporated by reference into this Count.

### The Conspiracy

19. Beginning at a time unknown, but no later than January of 2011, and continuing through in or about December of 2013, within the Eastern District of North Carolina and elsewhere, the defendant ATOYA BELLAMY, did knowingly combine, conspire, confederate, and agree with others known to the United States Attorney, to commit offenses against the United States, to wit, to knowingly and willfully execute and attempt to execute a scheme and artifice to: (1) defraud a health care benefit program, to wit, Medicaid, and (2) obtain by means of materially false and

7

fraudulent pretenses, representations, and promises, any of the money or property owned by, and under the custody or control of said health care benefit program; in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347.

## Purpose of the Conspiracy

20. It was the purpose of the conspiracy for CSS, Spruill, BELLAMY, and other conspirators to benefit from the submission of claims to Medicaid and its MCOs for fictitious services.

## Overt Acts

21. In furtherance of the conspiracy, and to effect the objects thereof, there were committed in the Eastern District of North Carolina various overt acts, including, but not limited to the following:

a.) A member of the conspiracy identified unutilized OBHS at CSS; and

b.) A member of the conspiracy caused false electronic claim transmissions to the Medicaid program and its MCOs using the Medicaid Identification Numbers of individuals who did not receive the unutilized, but billed, OBHS.

All in violation of Title 18, United States Code, Section 1349.

8

## FORFEITURE NOTICE

Upon conviction of the offense in Count One of the Information, the Defendant shall forfeit to the United States, pursuant to 18 United States Code, Section 982(a)(7) and 18 United States Code, Section 981 (a)(1)(C), the latter as made applicable by 28 U.S.C. Section 2641(c), any property constituting, or derived, directly or indirectly, as a result of said offense including, but not limited to the gross proceeds of the offense.

If any of the above-described forfeitable property, as a result of any act or omission of the Defendant, cannot be located upon the exercise of due diligence; has been transferred or sold to, or deposited with, a third party; has been placed beyond the jurisdiction of the Court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any property of said defendant up to the value of the forfeitable property described above.

ROBERT J. HIGDON, JR.
United States Attorney


BY: WILLIAM M. GILMORE
Assistant United States Attorney

9